UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

No. 1:22-cr-

v.

HON.
United States District Judge

ASP PLATING COMPANY,

        Defendant.
_____/

## PLEA AGREEMENT

This constitutes the plea agreement between ASP Plating Company and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.     <u>Plea to an Information.</u>    The defendant agrees to plead guilty to an Information. The Information charges the defendant with a felony violation of the Clean Water Act in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A). The defendant waives its right to indictment by a grand jury.

2.     <u>The Defendant Understands the Crime.</u>    In order for the defendant to be guilty of violating Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A), the following must be true:

    a.     First, the defendant violated requirements and limitations of a pretreatment program, namely the (i) bypass prohibition, (ii) batch discharge notice provision, and (iii) zinc discharge limitations of ASP Plating Company's Industrial User Permit No. 13 issued by the Grand Haven-Spring Lake Sewer Authority ("GHSA") and GHSA's sewer authority rules and regulations ("ordinance").

      b.     Second, the pretreatment program was a program administered by a publicly owned treatment works and had been approved under 33 U.S.C. § 1342(b)(8).

      c.     Third, the defendant acted knowingly.

The defendant is pleading guilty because the defendant is guilty of the charge described above.

    3.     <u>The Defendant Understands the Penalties.</u>    The statutory minimum and maximum sentence that the Court can impose for a violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A), is the following:

      a.     not less than one and not more than five years of probation;

      b.     a fine of not less than $5,000, and not more than $500,000, or twice the pecuniary gain from the offense, or twice the pecuniary loss to a person other than the defendant, whichever is greater; and

      c.     a $400 mandatory special assessment.

The defendant agrees to pay the special assessment at or before the time of sentencing unless the defendant affirmatively demonstrates to the Court that it lacks the ability to pay.

    4.     <u>Restitution.</u>  Pursuant to 18 U.S.C. §§ 3663(a)(1)(A) and (3), the defendant agrees to make full restitution for the losses caused by its activities. The defendant agrees that the restitution order is not restricted to the count to which the defendant is pleading guilty. The parties currently believe that the applicable amount of restitution is $4,212.54, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

5. <u>Factual Basis of Guilt.</u>  The defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing, and which does not include all of the facts underlying the defendant's guilt:

a. ASP Plating Company was incorporated in 1969. It is an electroplating company located in Grand Haven, Michigan. Gary Stephen Rowe is the president of the company, and was at all times relevant to this case. He has worked at the company for nearly forty years. According to the defendants, Stephen Frederick Rowe was never formally appointed as the company's vice president but effectively and publicly acted as same since 2017. Stephen Rowe reported to Gary Rowe.

b. Gary Rowe applied for an industrial pretreatment permit on October 31, 2017, on behalf of ASP. The GHSA issued the permit to ASP, Industrial User Permit No. 13, on December 7, 2017. The permit was extended on November 9, 2020, and at that time set to expire on June 30, 2021. The permit was later extended again, and the company retains a permit pursuant to a consent order negotiated by ASP and GHSA as a result, in part, of the violations of the permit described herein. The GHSA owns and operates a publicly owned treatment works, which was issued a Clean Water Act ("CWA") National Pollutant Discharged Elimination System ("NPDES") permit by the Michigan Department of Environment, Great Lakes, and Energy. The NPDES permit governs the GHSA's treatment and discharge of pollutants to the Grand River, a water of the United States. The GHSA also administers and enforces a pretreatment program through its ordinance that was approved under the CWA by the State of Michigan. Among other things, the GHSA ordinance requires industrial users in Grand Haven

3

who discharge industrial waste to the GHSA to obtain an industrial user permit regulating such discharges.

   c.  The permit issued by GHSA to ASP contained, in relevant part, the following restrictions: (i) the daily maximum discharge of zinc was limited to 2.58 mg/L, and the monthly average discharge of zinc was limited to 1.46 mg/L; and (ii) batch discharges required advance notification to GHSA, no later than 24 hours in advance, that included, among other facts, the date and time of discharge, the type of waste, and concentration.

   d.  In addition, bypassing a pretreatment system is prohibited under federal regulations and the applicable GHSA ordinance, unless (i) the bypass did not cause a violation of a pretreatment standard or requirement and it was necessary for essential maintenance, or (ii) it was unavoidable, there was no feasible alternative to bypass, and the industrial user submitted proper notice to the GHSA, if possible, at least ten days prior to the bypass.

   e.  At least between April 2015 and November 2021, ASP routinely discharged zinc in excess of the daily and monthly permitted limitations. Many of these discharges were batch discharges without notice to the GHSA. Many of these discharges also bypassed the pretreatment system entirely, and the exceptions to the bypass restriction did not exist. ASP violated its permit numerous times during this time period. Gary Rowe knowingly directed and supervised the discharges, as did Stephen Rowe once he joined the company in 2017.

   f.  The GHSA periodically monitored ASP's discharges. Gary Rowe and Stephen Rowe, acting at Gary Rowe's direction, instructed employees to check for the GHSA monitor before discharging wastewater containing zinc in excess of permitted limitations.

      g.    One such illegal discharge occurred on March 22, 2021. A 1.5-hour composite sample of wastewater discharged from ASP and collected by EPA contained 310 mg/L of zinc. Wastewater discharged at other times that day also contained elevated levels of zinc, but the 1.5-hour composite sample alone, if no other zinc had been discharged, corresponds to a discharge in excess of the 2.58 mg/L daily limit. ASP and Gary and Stephen Rowe bypassed the pretreatment system in discharging this waste and did not notify GHSA of the batch discharge or bypass.

    6.    <u>Non-Prosecution Agreement.</u>  The U.S. Attorney's Office for the Western District of Michigan agrees not to bring additional criminal charges against the defendant in the Western District of Michigan arising out of the defendant's violations of the provisions of the industrial pretreatment permits issued to ASP by GHSA between 2015 and 2021, provided that the conduct is disclosed to the government by the defendant or its attorney prior to the date of this agreement. This promise of non-prosecution shall not include crimes of violence, if any, or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

    7.    <u>The Sentencing Guidelines.</u>    The defendant understands that, although the Guidelines are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the defendant. The defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The defendant understands that the defendant and the defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guidelines range and the sentence to be imposed. The

defendant further understands that the Court shall make the final determination of the Guidelines range that applies in this case, and may impose a sentence within, above, or below the Guidelines range, subject to the statutory maximum and minimum penalties described elsewhere in this agreement.  The defendant further understands that disagreement with the Guidelines range or sentence shall not constitute a basis for withdrawal of the plea.

8. <u>There is No Agreement About the Final Sentencing Guidelines Range.</u>  The defendant and the U.S. Attorney's Office have no agreement as to the applicable Guidelines factors or the appropriate Guidelines range.  Both parties reserve the right to seek any sentence within the statutory maximum and minimum.

9. <u>Waiver of Constitutional Rights.</u>  By pleading guilty, the defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court.  As a result of the defendant's guilty plea, there will be no trial.  At any trial, whether by jury or by the Court, the defendant would have had the following rights:

   a. The right to the assistance of counsel, including, if the defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the defendant.

   b. The right to be presumed innocent and to have the burden of proof placed on the government to prove the defendant guilty beyond a reasonable doubt.

   c. The right to confront and cross-examine witnesses against the defendant.

   d. The right, if the defendant wished, to testify on the defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

6

e. The right not to be compelled to testify, and, if the defendant chose not to testify or present evidence, to have that choice not be used against the defendant.

f. By pleading guilty, the defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment, or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

10. <u>Waiver of Other Rights.</u>

    a. <u>Appeal and Collateral Attack.</u>

        i. <u>Waiver.</u> In exchange for the promises made by the government in entering this plea agreement, the defendant waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

        ii. <u>Exceptions.</u> The defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

            A. the defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

            B. the defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

            C. the guilty plea was involuntary or unknowing; or

      D. an attorney who represented the defendant during the course of this criminal case provided ineffective assistance of counsel.

   iii. If the defendant appeals or seeks collateral relief, the defendant may not present any issue in the proceeding other than those described in this subparagraph.

 b. <u>FOIA Requests.</u> The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

 c. <u>Hyde Waiver.</u> The defendant acknowledges, by its voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and the defendant hereby disclaims and waives any right to make any claim for attorney fees.

11. <u>The Court is Not a Party to this Agreement.</u> The defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the defendant cannot, for that reason, withdraw its guilty plea, and it will remain bound to fulfill all its obligations under this agreement. The defendant understands that no one—not the

prosecutor, the defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence the defendant will receive, except that it will be within the statutory maximum and minimum.

12. **This Agreement is Limited to the Parties.** This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement applies only to crimes committed by the defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

13. **Consequences of Breach.** If the defendant breaches any provision of this agreement, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The defendant further agrees to waive and forever give up its right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

14. **This is the Complete Agreement.** This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements,

understandings, or conditions be entered into unless in a writing signed by all parties or on the record in open court.

                                              MARK A. TOTTEN
                                              United States Attorney

7/26/22
Date

                                              JUSTIN M. PRESANT
                                              Assistant United States Attorney

       I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

7/26/22
Date

                                              GARY STEPHEN ROWE, President,
                                              on behalf of ASP Plating Company
                                              Defendant

7/25/22
Date

                                              STEPHEN FREDERICK ROWE,
                                              Vice President, on behalf of
                                              ASP Plating Company
                                              Defendant

      I am ASP Plating Company's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of its rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

7/25/22
Date

                                              PATRICK A. MILES, JR.
                                              Attorney for Defendant